UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10094-RGS

LINDA PINGIARO

v.

STANDARD INSURANCE COMPANY, et al.

MEMORANDUM AND ORDER
ON PARTIES' CROSS-MOTIONS
FOR SUMMARY JUDGMENT

December 9, 2013

STEARNS, D.J.

Plaintiff Linda Pingiaro brought this action in the Massachusetts state court against Standard Insurance Company (Standard) and her former employer, Eaton Vance Management (EVM), asserting claims related to Standard's denial of her application for disability benefits. Pingiaro variously alleges breach of contract, breach of the implied covenant of good faith and fair dealing, violations of Mass. Gen. Laws ch. 93A and ch. 176D, and promissory estoppel. Defendants removed the case to the U.S. District Court, invoking federal preemption under Section 514(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144(a).

Defendants now move separately for summary judgment. Pingiaro

opposes both motions and also cross-moves for summary judgment against each defendant. As will be explained, because Pingiaro has failed to exhaust her administrative remedies, her motions for summary judgment will be denied, while defendants' motions for summary judgment will be granted.

FACTUAL BACKGROUND[1]

Linda Pingiaro was employed at EVM, an investment management firm based in Boston, Massachusetts, from December of 1982, until her termination in March of 2010. During 2009 and 2010, EVM offered certain benefits to its employees, including a short-term disability (STD) plan, as well as a long-term disability (LTD) plan. Standard was the administrator of both plans. At the time of her termination, Pingiaro was employed as an internal wholesaler team leader, and, at all relevant time periods, was a participant in the STD and LTD plans.

**The Short-Term Disability Income Benefit Plan**

EVM was self-insured with respect to its STD plan.[2] According to the Plan Document, EVM was the Plan Sponsor and was solely responsible for the payment of benefits under the plan, while Standard served as the Claims

---

[1] References to the administrative record are designated as "AR [Bates Number]."

[2] The STD Plan Document is at AR 42-61.

Administrator. Although Standard was given the "discretionary authority to make initial decisions" and to "review and decide appeals of denied or closed claims," EVM "retain[ed] the right of final review and decision on all claims and appeals."[3]

The STD plan provided a review procedure in the event of the denial of a claim. Subpart "H," under "CLAIMS" and titled "Review Procedure," read as follows: "If all or part of a claim is denied, you may request a review. You must request a review in writing within 60 days after receiving notice of the denial."[4]

### The Long-Term Disability Income Benefit Plan (LTD)

EVM was fully insured by Standard with respect to its LTD plan.[5] According to the LTD Plan Document, Standard was given "full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy" except for "those functions which the Group Policy specifically reserve[d] to the

---

[3] AR 42.

[4] AR 59.

[5] The LTD Plan Document is at AR 1-38.

Policyholder or Employer."[6]

The waiting period for eligibility under the LTD plan was 180 days. The LTD Plan also provided a review procedure in the event of a claim denial. The time period for requesting a review was 180 days.

## Pingiaro's Claim for Disability Insurance

Linda Pingiaro requested STD benefits on August 6, 2009, after taking a leave from work on August 5, 2009, in anticipation of a laparoscopic excision of an ovarian cyst. She provided Standard, through EVM, with a signed authorization for access to her medical treatment records as part of her application for STD benefits. Pingiaro underwent the surgery on August 7, 2009.

Linda Bafaro at Standard was the claims examiner assigned to Pingiaro's case. The AR contains numerous communications between Bafaro and Pingiaro, and between Bafaro and Kimberly Pacheco, the Benefits Manger at EVM. On August 18, 2009, Dr. Gunter Sotrel, Pingiaro's surgical attending physician, provided an Attending Physician's Statement (APS) to Standard. He indicated that he was then unable to determine a return-to-work date for Pingiaro, but that he would follow up in two weeks. On August 24, 2009,

---

[6] AR 32.

Standard approved Pingiaro's receipt of STD benefits for the period August 13 through August 24, 2009. Bafaro notified Pacheco of the approval.

After the initial approval, Standard twice extended Pingiaro's STD benefits, first to September 9, 2009, and then to December 13, 2009, after receiving additional medical documentation from Dr. Sotrel and Dr. Paul J. Feiss, Pingiaro's primary care physician.

Although the STD benefits continued to be paid, Pingiaro received a confounding series of letters from Standard notifying her either that her physicians' statements were incomplete, or that Standard needed additional medical documentation to continue her benefits. She also received letters informing her that her benefits had been terminated, but that she could request an administrative review of the decision within 180 days.[7] These letters were followed by notices informing Pingiaro that her STD benefits had been approved or extended, often received on or after the date she had been told her benefits would expire.[8]

---

[7] These letters mistakenly cited the appeal period for review of LTD benefits denials rather than for denials of STD benefits.

[8] There is much recrimination between the parties as to whether the confusion is attributable to Standard's bureaucratic ineptness or to Pingiaro and her doctors for failing to submit the requested medical records, although the dispute ultimately has no bearing on the outcome.

In November of 2009, Pinigiaro was contacted by Judith Levy, who, according to Pingiaro, identified herself as a "medical caseworker" for Standard tasked with helping Pingiaro make the transition from STD to LTD. Pingiaro alleges that Levy did not reveal herself as a "vocational case manager" whose real job was to assess Pingiaro's ability to return to work.  It appears from the record that Levy's actual assignment (whatever her title) was to determine the nature of Pingiaro's job at EVM to inform Standard's decision as to whether she was disabled from her "own occupation."  On November 24, 2009, Levy submitted a "detailed job specialty report"[9] concluding that Pingiaro's occupation fell under the category of "registered representative" (also called "account executive, broker, investment executive, stock-broker"). She listed the associated physical demands as "sedentary," including "occasional reaching, handling, fingering" and frequent speaking and hearing.[10]

On November 25, 2009, Bafaro informed Pacheco that Pingiaro's STD benefits had been extended through December 13, 2009.  Bafaro recorded the extension in Standard's records.  The same day, Standard sent a letter to

---

[9] AR 174-177.

[10] AR 175.

Pingiaro stating that her benefits were scheduled to expire on December 13, 2009, the date her doctor had given for her anticipated return to work. Pingiaro was again told that she had 180 days to request a review of the claims decision.

Through December and January, Pingiaro communicated intermittently with Bafaro. Pingiaro states that she was under the impression that Standard was "working with" her, and that her STD benefits were being converted to the LTD plan (after the requisite 180 day waiting period). Pingiaro continued to submit medical documentation to Standard as did her doctors.

Pingiaro alleges that Standard and EVM colluded to mislead her as to her eligibility for LTD benefits because Standard did not want the expense, and EVM had no desire to have her back on its payroll. Pingiaro points to a case note entered by Bafaro on December 29, 2009, stating that "[Levy] will call [Pingiaro] one more time if we are accepting liability by extending claim and rolling into LTD."[11] Pingiaro reads the case note as an admission by Standard that its true concern was for its financial interest and not her actual medical circumstances.

On January 13, 2010, Dr. Feiss provided Standard with an updated APS

---

[11] AR 75.

stating that Pingiaro would not be able to return to work until her need for pain medication subsided.[12]  On January 21, 2010, Standard referred Pingiaro's case file to one of its consulting physicians, Dr. Richard Handelsman. Dr. Handelsman concluded that the medical evidence in the file did not support Pingiaro's out-of-work status after December 13, 2009, and that she could have returned to work as early as September 9, 2009.[13] Dr. Handelsman did not personally examine Pingiaro.

On January 21, 2010, Bafaro notified Pacheco that Pingiaro's disability benefits should have been terminated on December 12, 2009.  Bafaro apparently called Pacheco before notifying Pingiaro about the benefits decision.  On January 28, 2010, Bafaro entered a case note indicating that she had spoken to Pingiaro by telephone informing her that she would be receiving a detailed denial letter, and that she also "gave her information for appeal."[14]

Although Standard ultimately found Pingiaro eligible for STD benefits through December 13, 2009 only (as detailed in the February 4, 2010 letter), she had continued to receive payments from EVM.  On January 30, 2010, EVM stopped paying benefits to Pingiaro.

---

[12] AR 429-431.

[13] AR 433-445 and AR 76.

[14] AR 77.

### The Termination Letter[15]

In a letter dated February 4, 2010 (the Termination Letter), Standard informed Pingiaro that it had determined that, as of December 14, 2009, she no longer met the "Definition of Disability" in the group policy and that Standard was therefore "unable to approve benefits beyond December 13, 2009."[16] The letter provided a detailed explanation of the denial, including the statement that a physician consultant who had reviewed the medical records "notes that you could have returned to work at a full time sedentary occupation within two weeks of Dr. Feiss' evaluation."[17]

The letter also explained the process of requesting a review of the claims decision. Beneath an underscored heading titled "<u>The following is information regarding your right to a review</u>," the letter stated: "If you want us to review your claim and this decision you must send us a written request within 180 days after you receive this letter."[18]  It continued: "If you request a review, it will be conducted by an individual who was not involved in the original decision.  If necessary, the person conducting the review will consult with a

---

[15] AR 451-454.

[16] AR 451.

[17] AR 453.

[18] AR 453-454.

medical professional with regard to your claim. The medical professional will be someone who was not previously consulted in connection with your claim."[19] Finally, the letter stated: "If you request a review and the decision to deny your claim is upheld, you will have the right to file suit under Section 502(a) of [ERISA]."[20]

### Pingiaro's Responses to the Benefits Determination

On February 22, 2010, Standard received a letter from Attorney M. Katherine Sullivan requesting a copy of Pingiaro's claims file.[21] The letter explained that Sullivan had been retained by Pingiaro to file a lawsuit in the event that Standard did not reverse its claims decision. The letter did not request a review or otherwise invoke the appeal process.[22]

---

[19] AR 454.

[20] *Id.*

[21] AR 457-464.

[22] The "Re" line of the letter lists Pingiaro's name and benefits claim number. It contains a section titled "Legal Basis for Request," which outlines Pingiaro's right to review the documents in Standard's claims file. In a "Conclusion" section, Sullivan noted that the documents she requested were "directly relevant to a determination as to whether Standard's review of Ms. Pingiaro's file was reasonable under ERISA. Accordingly, Standard's failure to respond fully to our request of information will prejudice Ms. Pingiaro's ability to respond to Standard's decision to terminate her benefits . . . ." She also requested that a litigation hold be placed on all electronic documents, stating that she had been "retained by Ms. Pingiaro to proceed with litigation in the event Standard's claims decision is not reversed."

Two days later, on February 24, 2010, Sullivan faxed a letter to Standard that stated: "I am writing to withdraw our request dated February 22, 2010 for a copy of Ms. Pingiaro's Plan documents and claims file. As this firm does not represent Ms. Pingiaro, please disregard our correspondence dated February 22, 2010."[23]

On January 18, 2011 (five and a half months after the expiration of the 180 day appeal period that began to run on February 4, 2010), Pingiaro's current attorney, Katherine Fallon, sent Standard a letter protesting the termination of Pingiaro's STD benefits and demanding a settlement offer.[24] Standard responded by email on February 18, 2011, stating that it "found no basis to alter our prior decision that Ms. Pingiaro is not eligible for benefits."[25]

**EVM Terminates Pingiaro's Employment**

On Feb 10, 2010, Dr. Feiss provided EVM with an APS, iterating that Pingiaro was no longer able to work because of severe chronic pain and requesting that she be transitioned from STD to LTD.[26] Pingiaro informed

---

[23] AR 468.

[24] AR 486.

[25] AR 504.

[26] The correspondence referred to in this paragraph, between Pingiaro, her doctor, and EVM, are not part of the AR. Pingiaro also states that she was approved by the Social Security Administration (SSA) for disability benefits

11

EVM on February 24, 2010, that she would not be returning to work. In response, EVM terminated her employment effective March 12, 2010. In a March 2, 2010 letter to Pingiaro, EVM informed her that the termination of her employment had no bearing on her right to request a review of the denial of her STD claim.

## DISCUSSION

### Pingiaro's Claims are Preempted by ERISA

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts any and all state claims "related to" an employee benefit plan (other than state laws that "regulate insurance." 29 U.S.C. § 1144(b)(2)(A)). A claim "relates to" an ERISA-covered plan if it (1) has a connection with, or (2) has a reference to, such a plan. *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 324 (1997).

In her Complaint, Pingiaro alleges claims for breach of contract (both defendants), breach of the implied covenant of good faith and fair dealing (both defendants), promissory estoppel (EVM only), and violations of Mass.

---

and that she was deemed unable to engage in any gainful employment by the SSA. The SSA determination is also not part of the AR. In any event, a Social Security determination of disability generally does not have controlling weight in the review of a plan administrator's determination. *See Pari-Fasano v. ITT Hartford Life & Accident Ins. Co.,* 230 F.3d 415, 420 (1st Cir. 2000).

Gen. Laws ch. 93A and ch. 176D (Standard only). Counts I and II allege that EVM and Standard breached their contractual duties to Pingiaro by denying her employee benefits and by failing to comply with their obligations under the contracts of insurance that were part of her employee benefit plan. Counts III and IV, alleging breach of the implied covenant of good faith and fair dealing, involve EVM's and Standard's conduct in denying Pingiaro's disability benefits. Count V alleges Pingiaro detrimentally relied on EVM's promises regarding her employment benefits, while Count VI alleges that Standard's decisions in administering EVM's employee benefit plan with respect to Pingiaro violated the consumer protection provisions of Mass. Gen. Laws ch. 93A and ch. 176D. All of these claims "relate to" an employee benefit plan and are thus preempted by ERISA.

## ERISA Summary Judgment Standard

A motion for summary judgment is the procedural vehicle by which the denial of a benefits claim is tested under ERISA. *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005). Summary judgment is, however, a misnomer as a "trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary."

*Leahy v. Raytheon, Co.*, 315 F.3d 11, 18 (1st Cir. 2002). Because summary judgment is simply a procedural vehicle for deciding the issue of disability, "the non-moving party is not entitled to the usual inferences in its favor." *Orndorf,* 404 F.3d at 517.

### Failure to Exhaust Administrative Remedies

As a prerequisite to bringing a suit to recover benefits, a claimant must exhaust the administrative remedies available under her ERISA plan. *See Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir. 1998); *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 825-826 (1st Cir. 1988). There is no genuine dispute of fact over whether Pingiaro exhausted her administrative remedies in this case. She clearly did not.

Standard's termination letter of February 4, 2010, explicitly stated that Pingiaro's STD benefits were being terminated, and Pingiaro does not contend she understood it to say anything else. (Nor does she contest the fact that she received the letter.) The termination letter also set out the 180-day deadline for a request for a review. Moreover, Pingiaro does not dispute that over the next few months, she was repeatedly reminded of the 180-day deadline by employees of Standard and EVM.

By waiting until January 18, 2011, almost five months after the 180-day appeal period expired on August 3, 2010, to reinitiate contact with Standard

(a contact that had been broken off by attorney Sullivan on February 24, 2010), Pingiaro forfeited any right she had to an administrative appeal, and consequently any right she otherwise would have had to seek judicial relief under ERISA. There is a firmly established federal policy favoring exhaustion of remedies in ERISA cases. *McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 39-40 (1st Cir. 1998). The purpose of the requirement is to encourage resolution of claim disputes without litigation. *See, e.g., Terry*, 145 F.3d at 40-41. "The same principles which inform the ERISA exhaustion requirement also counsel that part of that internal administrative process includes the responsibility on the claimant's part to file appeals in a timely fashion." *Id.* at 40.[27]

Pingiaro claims that because Standard "treated" her January 18, 2011 letter as an appeal, it "waived" the exhaustion requirement. Even assuming that Standard's response to the January 18, 2011 letter – that it saw no reason to reconsider its decision to end Pingiaro's benefits – could be construed as a

---

[27] Pingiaro also asserts that Standard was "on notice" as a result of Sullivan's February 22, 2010 letter requesting the claims file, that Pingiaro disagreed with the benefits denial and planned to appeal it. This is beside the point. The primary purpose of ERISA's exhaustion requirement is not to put insurers "on notice," but rather, as noted, to encourage resolution of claim disputes. A resolution cannot be achieved without the plaintiff's participation in the ERISA review process.

waiver (which is doubtful), the common-law doctrine of waiver has little, if any, place in ERISA law. *See Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 648-649 (7th Cir. 1993) (waiver principles did not apply in an ERISA action where plaintiff could not show that she had detrimentally relied on misleading letters sent by the insurer).[28] *See also Malke v. Metro. Life Ins. Co.*, 2012 WL 6738250, *2 (D. Mass. Dec. 27, 2012) (an insurer's statement that it has waived a deadline is irrelevant to the exhaustion requirement if the claimant cannot show that his or her failure to exhaust within the requisite time period was a result of reliance on such representation); *Fletcher v. Tufts Univ.*, 367 F. Supp. 2d 99, 117 (D. Mass. 2005) (same).

Finally, Pingiaro attempts to invoke the futility exception to the exhaustion requirement; she argues that Standard would not have dealt with an appeal fairly had she in fact brought one. Courts, however, have repeatedly held that "blanket assertion[s], unsupported by any facts, [are] insufficient to call the futility exception into play." *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 63 (1st Cir. 2005).

---

[28] Pingiaro's only claim of detrimental reliance is directed at EVM for its alleged broken promises about her benefits plan, and she makes no such claim against Standard for rebuffing her January 18, 2012 letter (nor could she make such a claim, as the appeal deadline had already expired).

ORDER

For the foregoing reasons, defendants' motions for summary judgment are ALLOWED. Pingiaro's cross-motions for summary judgment are DENIED. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE